# William Ross Bane, Appellee, v. Edward E. Bane et al., Appellants.

## Gen. No. 7,983.

1. ESTATES OF DECEDENTS—*when equity will administer.* Only in extraordinary cases will a court of chancery exercise its general juris-diction to take upon itself the administration of estates and supersede that of the probate court.

2. EQUITY—*duty to determine all controverted questions.* It is the duty of a court of chancery, having jurisdiction of the parties and of the subject matter, to do complete justice and to determine all contro-verted questions.

3. WILLS—*creation of trust by devise of estate for sale.* The devise in a will of all the real and personal property for the purpose of sale in itself creates a testamentary trust in case the executors or trustees are required under the will to establish a trust from the proceeds and en-force contributions from other devisees to make up any deficiency in the trust fund.

4. ESTATES OF DECEDENTS—*enforcing contributions in equity.* Equity may decree a contribution from other devisees to complete the amount of a devised trust fund for one devisee, even though his complaint al-leged no facts to support a contribution, as long as the other devisees did not object and evidence showed advancements made to them from which a duty to contribute might be inferred.

5. ESTATES OF DECEDENTS—*sufficiency of bill to invoke equitable jurisdiction of.* A bill which alleges that complainant's trust fund as devised to him would be depleted by the executors' efforts to charge upon it expenses of the estate and an unreasonable attorney's fee, and that he was entitled to contribution from other devisees in case the realty could not be sold for enough to cover the fund and that other trustees should be appointed, sufficiently invokes the equitable powers of chancery to require its taking jurisdiction of the entire estate, stating the account and passing on all the items thereof, including the attorney's fee, which had been incurred by the trustees in defending a suit to con-test the will, brought by complainant.

6. ESTATES OF DECEDENTS—*necessity of stating basis for denying solicitor's fees to trustees.* A decree finding that trustees were not en-titled to solicitor's fees for defending against a suit for new trustees, but not stating the basis of the finding, will be reversed for further de-termination.

Appeal by defendants from the Circuit Court of McLean county; the Hon. Edward Barry, Judge, presiding. Heard in this court at the April term, 1926. Reversed and remanded with directions. Opinion filed October 31, 1927.

Chas. M. Peirce, for appellants.

Charles A. Zweng and C. B. Hughes, for appellee.

Mr. Presiding Justice Shurtleff delivered the opinion of the court.

Appellee filed his bill of complaint in the circuit court of McLean county, praying for an accounting with the executors of the estate of George W. Bane, deceased, who were also named as trustees in the will; for the appointment of other persons as trustees; for the payment of interest upon the trust fund to complainant, and for contribution under the terms of the will by other children of the testator, beneficiaries of his bounty, and including the executors and trustees.

George W. Bane died February 24, 1924, leaving four children, Henry S. Bane, Edward E. Bane, Nora Skaggs, Katherine Virgiel, and a grandson, William Ross Bane, son of a deceased son of testator, his only heirs at law. Said George W. Bane, deceased, left a last will and testament which had been duly probated, the second, third and fourth provisions of which were as follows:

"SECOND, I give, devise and bequeath to my executors, for the sole purpose of selling and converting into money all of my real and personal property of every kind and character and hereby authorize my said executors to convert the same into cash as soon as they can after my decease and I hereby give to said executors full power and authority to make title to said real or personal property with full power to said executors to make deed of conveyance for my said property and to sell the same at either public or private sale as in their judgment may be to the best interest of my estate.

"THIRD, After my property has been converted into money I will and direct that my executors hereinafter named first pay my funeral expenses and indebtedness and that out of the residue they pay to Edward E. Bane and Henry S. Bane, trustees, for my grandson, as herein provided the sum of Ten Thousand Dollars ($10,000.00) and I hereby direct said trustees to hold said money and the income derived therefrom until my said grandson arrives at the age of Twenty-one (21), at which time I direct that said trustees pay annually to my said grandson the net income of the said sum of Ten Thousand Dollars, which said sum is to be either loaned or invested in real estate or bonds at the discretion of my herein named trustees and held by them as such trustees and should my grandson survive to the age of Thirty years I will and direct that my said trustees turn over to him all of the net income and principal or title to land at which time it is my will and I direct that he become the owner of said Ten Thousand Dollars ($10,000.00), or lands so purchased by my trustees in lieu thereof in fee simple. Should said grandson depart this life prior to the coming of age of Thirty years, then it is my will and I direct that said Ten Thousand Dollars ($10,000.00) be equally divided between my children Henry S. Bane, Edward E. Bane, Nora Bane Skaggs, and Katherine E. Bane Virgiel, and in case of the death of either of my said children so last above prior to date of such distribution then it is my will that the parent's share so dying, be distributed with the child or children of such child of mine so dying, share and share alike. And having heretofore distributed to my said last named children certain lands and moneys it is my will and I direct that in case of insufficiency of my assets to pay my just debts derived out of the real and personal property owned by me at the time of my death, that each of said children of mine herein named, Henry S. Bane, Edward E. Bane, Nora Bane Skaggs and Katherine E.

Bane Virgiel, contribute in equal proportion a sufficient sum so that the trustees hereinabove named of my grandson, William Ross Bane, shall receive the full Ten Thousand Dollars ($10,000.00), and in case there is any surplus of my property after the payment of my just debts and funeral expenses, so derived by my executors or paid to them by my children, then in that event, such surplus so in the hands of my executors, I will and direct shall be divided in equal proportion between Henry S. Bane, Edward E. Bane, Nora Bane Skaggs, and Katherine E. Bane Virgiel, my children, share and share alike and it is my will and I direct that in case of the death of either of said children, the child or children of any such deceased child shall take the parent's portion, share and share alike.

"FOURTH, I hereby nominate and appoint my sons, Edward E. Bane and Henry S. Bane, executors of this my last will and testament and direct that they be allowed to qualify and act without bond."

Within the year after the probate of the will, appellee, the grandson, presented his bill of complaint to the circuit court of McLean county to contest the will of his grandfather, charging that the testator was mentally incompetent to make a will and was under the improper restraint and undue influence of said appellants named as executors and trustees. There was an amended bill filed, charging that the testator had made an agreement to execute a will or distribute 600 acres of land among five branches of the family, appellee to receive one-fifth interest thereof. Additional undue influence was also charged. Appellee had employed two attorneys in Indiana, where he resided, and with them were associated two attorneys in Illinois. Appellants employed an attorney, answered the bill and a great deal of legal work was performed in preparing the case for trial. Seventy-five to one hundred witnesses were interviewed, instructions were drawn and the defendants' case, managed and con-

trolled by the executors and trustees, was fully prepared for trial. When a jury was called to try the case, complainant announced that he had no testimony to offer and the cause was dismissed at the costs of the complainants. For the legal services performed, appellants, out of the funds of the estate, paid the sum of $2,500, and the testimony of numerous witnesses is uncontradicted that the amount was reasonable and a usual and customary fee charged and paid for the services performed.

Appellants, as executors, submitted their account and report to the probate court of McLean county, in said estate, asking an allowance for said attorney's fees and other expenses of said will contest. Before the probate court had passed upon said report, appellee presented this bill of complaint, setting out the amount of property owned by testator at the time of his decease, and charging that, in value, it would be about sufficient to make up complainant's legacy and the trust fund, if such bills and charges were not deducted therefrom, but that such deductions, if made, would deplete and destroy the said trust fund; that said complainant became 21 years of age on March 9, 1924, and became entitled to interest upon said fund from that date; that complainant was entitled to contribution, in any event, from said four children to the end that said trust fund should equal the sum of $10,000; that the real estate had not been converted into money, and the complainant could not state whether a contribution would be necessary; that Edward E. Bane and Henry S. Bane had neglected their duties as trustees, had not qualified, had not collected and protected the trust fund or collected the income and paid the same to the complainant. The bill charged that Edward E. Bane and Henry S. Bane were residuary legatees and were opposed to the interest of the complainant in connection with said trust fund, and in acting as such executors they were attempting to re-

duce and destroy the trust fund by seeking to charge the costs of administration, including an unreasonable attorney's fee, to said trust fund; and complainant alleged that it was necessary that a suitable trustee be appointed by the court, etc. We have substantially given the prayer of the bill.

Appellants and the other residuary legatees answered the bill, denying all charges of negligence and fraud, denying the right of complainant to ask or demand contribution, and averring that certain lands had not been sold on account of the litigation provoked by complainant. The answers denied that the costs of said will contest suit were exorbitant and averred the right to pay such expenses out of the entire estate, including the costs and expenses of the executors incurred in defending said will. The answers further averred that as soon as the real estate could be sold and there was a sufficient fund on hand to pay the funeral expenses, just debts and costs of administration, anything remaining would be turned over to the trustees to make up said fund. The answers averred it was inequitable to ask the residuary legatees to contribute to a fund which complainant could deplete and waste by unnecessary and uncalled for litigation. Appellants denied the necessity for the appointment of other trustees in place of those provided for in said will, and denied all misconduct and mismanagement. There was a replication filed and the cause was referred to the master in chancery.

Complainant offered only the testimony of the executors as to certain dispositions of property made in 1920 by the testator to the defendants to the bill, and that the executors, since the answers were filed, had sold different parcels of real estate, amounting to over $3,000. There was no proof made of negligence, mismanagement or fraud on the part of the executors, or any proof submitted why another trustee should be appointed. The proof on the part of appellants, that

the attorney's fees and other costs in the will contest
case were reasonable and just, was elaborate and un-
contradicted. Without objection by any party, the
current reports of the executors in the probate court
were offered and an account 'stated by the master;
there was no exception taken to stating the account.
There are exceptions to the disposition of items. The
master reported that the executors had in their hands
on September 19, 1925, the sum of $3,846.58; that sub-
sequently the executors realized from sales of real
estate $4,725, from saw logs $2.50; that they had in
their hands a United States Government bond for
$1,000, equivalent to cash, and that they had in their
hands, without taking into consideration said attor-
ney's fee, the sum of $9,574.08. The master found
that the four children of the testator were ready, able
and willing to contribute the sum of $425.92 to make
said trust sum amount to $10,000; that the said attor-
ney's fee of $2,500 was a reasonable charge for the
services performed, which were brought about by the
improvident conduct of the complainant in instituting
said suit; that it was the duty of the executors to de-
fend said will and the trust therein contained, and that
said attorney's fee should be deducted from the said
fund. The master further found that $60 were paid
out for expenses by the executors in connection with
said suit and $208.66 for items of rent and interest
from the funds coming into the executors' hands; that
until the sale of the real estate, which occurred Octo-
ber 3, 1925, it was impossible for the executors to turn
over the fund as a trust fund, and that inasmuch as
the complainant by his own misconduct had deferred
the time of conversion, the period of income on said
fund should date from the sale of said real estate on
October 3, 1925, and the items of rent and interest re-
ported should be added as an accumulation to the trust
fund. The master's report further found that Edward
E. Bane and Henry S. Bane were suitable and proper

persons to qualify as trustees and should do so by giving suitable and proper bond. Appellants made no objections to this report, but moved for its adoption before the court. Appellee objected to the report for the following reasons: It found that it was the duty of the executors to defend the will; that they represented the interest created by the trust fund; that the trust fund should be charged with the necessary and reasonable expenses of the will contest; that the master should have found that the will created a trust fund with contingent beneficiaries and that the will created a charge on the children of testator to contribute to the trust fund; that the master should have found that the executors under the law should defend the single issue as to the competency of testator, and that the costs, having been taxed against the complainant, should be charged to the estate as a part of the costs of administration. These objections were overruled by the master and made exceptions before the chancellor. The chancellor, in the decree, in part approved the master's report and in part sustained exceptions to it, and of his own motion held that it was the duty of the probate court to determine what amount, if any, said executors should be allowed in defending the suit to set aside the will of George W. Bane, deceased. The court found that the executors had converted the real estate into cash, and after paying the indebtedness of the estate, including the expenses of attorneys, incurred in defending the will contest suit, the executors have on hand $7,074.78, "which amount will be further reduced by costs and expenses of the public sale of real estate, auctioneer fees, bills, probate courts costs," etc. The decree found that the four children of deceased should contribute and pay into the trust fund the sum of $425.92 upon their voluntary offer to do so, in full satisfaction of that provision in the will, and that under the law no contribution could be exacted; that Edward E. Bane and Henry S. Bane are

suitable and proper persons to be and are appointed trustees, as provided in the will, and fixed their bond at the sum of $10,000, with sureties to be approved by the court. The court further found that the trustees should be charged with interest on the net amount of the trust fund in their hands, after all deductions approved by the court, from October 3, 1925, to be paid to appellee annually thereafter during his life until he reached the age of 31 years. It was ordered that no allowance be made to the trustees for solicitor's fees in this proceeding and that the costs of the suit be paid by the executors and included in their final report.

Appellants have assigned error upon this decree and bring the record, by appeal, to this court for review.

The decree does not state a final account, although the master found: "The net assets of the estate might have been on that date (October 3, 1925), turned over to the trustees and the deficits contributed by the children of the testator, and there has been nothing subsequent to that time which has accrued to prevent such transfer and contribution." The master's report did state an account, under the pleadings, to which no one filed exceptions, and, so far as this court can determine, nothing in addition was brought into the case before the chancellor except the costs and charges of the executors in selling the land. Error is assigned in that the court did not take jurisdiction of the items of the attorney's fee and the expenses in defending the will contest case on the part of the executors, and determine the equity of the allowances. It failed to do so on the ground that it had no jurisdiction and referred those items, with others, to the probate court for determination, and to pass upon the final report of the executors and to state an account. It is true that a court of chancery will not exercise its general jurisdiction to take upon itself the administration of estates and supersede that of the probate court except

in extraordinary cases (*Shepard v. Speer,* 140 Ill. 238; *Patterson v. Patterson,* 251 Ill. 153, 180); still, it is a familiar rule that it is the duty of the court of chancery, having jurisdiction of the parties and of the subject matter, to do complete justice and to determine all controverted questions. (*Whitman v. Fisher,* 74 Ill. 157; *Moore v. Brandenburg,* 248 Ill. 232, 239; *Maguire v. City of Macomb,* 293 Ill. 441, 453, and *Herrick v. Lynch,* 150 Ill. 283, 288.)

In *Moore v. Brandenburg, supra,* the court held: "A court of equity having been properly appealed to for relief, will not, if the bill is sustained by the proof, stop with merely declaring the title of defendants in error to be invalid, but will retain jurisdiction for the purpose of adjusting all the rights of the parties, even though in doing this it may be, in part, administering purely legal remedies."

As the court said in *Herrick v. Lynch, supra:* "There was no necessity of litigating over these accounts by piecemeal." The real question raised reverts back to the more important question as to whether appellee's bill stated a ground for equitable relief. It is shown in this case that at the time the decree was entered all of the assets of the estate, real and personal, had been converted into cash. It is reasonably inferable from the testimony and from the master's report that all claims and debts against the estate had been paid, and that the costs and expenses of administration had been paid, except the items in dispute. The estate had been administered upon. In *Whitman v. Fisher, supra,* the grounds for equitable jurisdiction were stated:

"The facts in the case at bar bring it clearly in the equitable jurisdiction of a court of chancery as thus defined. The personal estate of the testator was in the hands of the executors, and they were charged with its administration in a manner other than as directed by the statute. This created in them a special

trust. With the funds of the estate, they were directed to erect a family residence near Janesville. From what source, whether from the real or personal effects, the means for that purpose were to be derived, the will is silent. It was a question with the executors, whether the condition of the estate would justify the expenditure of a sum of money sufficient to erect a residence for the family as directed in the will. The widow of the testator, who was also one of the executors, was given the control of all the property of the testator until his youngest child became of lawful age, 'for their support, education and maintenance.' How was she to control all the property of the estate for the 'support, education and maintenance' of the family? No directions were given in the will.

"These difficulties arising in the execution of the trusts imposed upon the executors, and which they had undertaken to perform, made it eminently proper for them to apply to a court of equity for its aid and direction in the premises. We have no doubt of the jurisdiction of a court of equity to afford the requisite relief. 2 Story's Eq. Jur., § 961; *Hooper v. Hooper,* 9 Cush. 127; *Dimmock v. Bixby,* 20 Pick. 368."

. The devise in the Bane will of all of the real and personal property for the purpose of sale, in and of itself, creates a trust. *Hall v. Irwin,* 7 Ill. 176, 182. The whole basis of the will was to create a testamentary trust for the benefit of appellee to the amount of $10,000, with the demise to and power in the executors or trustees to take and sell real estate, and the authority to the same trustees to enforce contributions upon any equitable ground in case the estate did not reach the sum of $10,000. It is true the bill of complaint alleged no facts upon which a contribution could be decreed; but the defendants did not urge the defect and consented to a decree providing for a contribution without objection, and much testimony having been taken as to advancements made to the other children,

we must conclude that some equity existed in appellee's behalf upon which contribution could be enforced, otherwise testator's children would not have consented to the decree as entered. The charges in the bill all invoke equitable powers of a court of chancery and we must conclude that the court erred in not taking jurisdiction of the entire estate, stating the account and passing upon the various items of the account that are not disposed of in the decree.

The only further assignment of error we deem necessary to consider upon this appeal is the one based upon that part of the decree finding that no allowance be made the trustees for solicitor's fees in this proceeding. We are unable to determine the basis of the finding. Whether it was the determination of the chancellor that the item should not be passed on in this proceeding, but should be referred to the probate court for final adjustment, or whether it was the view of the chancellor that appellee, by his bill, secured the appointment and qualification of testamentary trustees and the equity of contribution established and therefore no allowance should be made to the executor-trustees in any event, we do not find amplified in the record, and therefore the assignment of error should be sustained and the item referred back to the court for further determination.

Inasmuch as the other matters raised by the assignments of error have not been passed upon by the lower court, they are referred back to that court for its determination.

The decree of the circuit court of McLean county is reversed and the cause remanded to that court, with directions to take jurisdiction of the settlement of the entire estate, to pass upon and determine the merits of the items of attorney's fees, expenses and costs in the estate, and in the two suits in the circuit court to state the account of the executors and trustees. In all other respects the decree of the circuit court is affirmed.

*Reversed and remanded with directions.*